## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ORIS WILLIAMS, ET AL.**

**VERSUS**

**GENESIS ENERGY, LLC**

**CIVIL ACTION**

**NO. 20-35-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 16) filed by Defendant Genesis Energy, LLC ("Defendant"). Plaintiffs Oris Williams ("Oris") and Tonya Williams ("Tonya") (collectively "Plaintiffs") oppose the motion. (Doc. 25.) Defendant filed a reply. (Doc. 27.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted.

### I.    Relevant Factual Background

This is an employment discrimination lawsuit filed by a former Genesis employee, Oris Williams and his wife, Tonya Williams. The relevant factual allegations are taken from Plaintiffs' *Complaint*, Doc. 1. They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff Oris was hired by Defendant in April of 2014 as an operator and was later promoted to lead operator. (*Compl.* ¶¶ 9–10, Doc. 1.) During his employment with Defendant, Oris alleges that he was subjected to discriminatory and retaliatory treatment which created a hostile work environment. (*Id.* ¶ 11.) For example, Oris alleges that while he was on medical leave, sometime between June 10, 2015 and June 15, 2015, Defendant demoted him. (*Id.* ¶ 12.) Upon

returning to work, Oris claims that Defendant not only "refused to comply with [his] doctor's limitations" regarding his job duties, but also increased his responsibilities. (*Id.* ¶¶ 12–14.)

Oris contends that he was subjected to "sabotage" by management and other employees of Defendant and made to feel as if "he was losing his mind" while working in the lab. (*Id.* ¶ 17.) According to Oris, his supervisor made statements such as, "You can do it…You are a superman…You can [ ] handle it." (*Id.* ¶ 16.) Oris' supervisor also made a statement that he was "on mood medication and that he was mentally unstable" during a meeting with several other employees. (*Id.* ¶ 18.) Oris avers that "some of the statement was untrue." (*Id.*)

As to religious discrimination, Oris claims that on multiple occasions he was called "Holy Ghost Brother" and "Preacher Man," in an attempt to make a mockery of his religious beliefs. (*Id.* ¶ 20.) As to racial discrimination, Oris alleges that he "was paid less money for the same job title [than] similarly situated white employees were paid." (*Id.* ¶ 24.) He also alleges that he was required to adhere to different company policies as compared to other employees in that: (1) he was required to punch out for lunch, while other employees were not, and (2) he was "not allowed to take advantage of other employment privileges like overtime, even though his job duties were substantially increased." (*Id.* ¶¶ 21–22.)

Ultimately, Defendant terminated Oris' employment on or about June 10, 2019, due to concerns over his alleged mental instability. (*Id.* ¶¶ 9, 23.) Specifically, the *Complaint* alleges:

> … [Oris] was informed by other employees of [Defendant] that he was terminated over the phone because [Defendant] management expressed to the employees that it did not want to terminate [Oris] in person due to his alleged mental instability. Further, it was expressed that [Oris] was terminated by phone to ensure that he would not "blow up the place". These statements were made despite [Oris] informing his supervisor that he was not mentally unstable. [Oris] believes that these statements were made in attempt to further destroy and ruin his character and reputation. As a result, [Oris] ha[s] been extremely disturbed by the rumors circulating about him [ ] at [Genesis].

(*Id.* ¶ 23.)

As a result of Defendant's conduct, Oris alleges that he has suffered severe emotional distress, depression, and loss of consortium. (*Id.* ¶¶ 25–26.) Plaintiff Tonya also alleges that she suffered loss of consortium due to Defendant's illegal actions. (*Id.* ¶ 26.)

Based on the above allegations, Plaintiffs assert claims for: (1) religious and racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) disability discrimination in violation of the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); (3) retaliation under the Louisiana Whistleblower Statute, La. R.S. 23:967 *et seq.*; (4) discrimination in violation of the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.* ("LEDL"); (5) defamation by innuendo; (6) defamation per se; (7) intentional infliction of emotional distress under La. Civ. Code art. 2315 *et seq.*; and (8) loss of consortium. (*Id.* ¶¶ 27–47.)  Plaintiffs seek, *inter alia*, compensatory, punitive, and exemplary damages, attorney's fees, and any other relief "this Court deems just and proper." (*Id.* at 9–10.)

## II.    Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson,* 764 F.3d at 502–03.  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

**III.    Discussion**

Defendant raises six arguments in support of its motion:

- Oris' Title VII and ADA discrimination claims should be dismissed as he failed to appropriately plead that he fulfilled the exhaustion requirement by timely filing an administrative charge as to his claims of race, religious, and/or disability discrimination;

4

- Oris' Title VII, ADA, and LEDL claims should be dismissed because he failed to properly plead factual allegations to support all of the elements of these claims;

- Oris' retaliation claim brought under the Louisiana Whistleblower Statute should be dismissed because he does not allege that he reported or threatened to report a violation of state law;

- Oris' defamation claims should be dismissed because he failed to plead which statements are allegedly untrue, and in fact, says some of the statements at issue are true;

- Oris' intentional infliction of emotional distress claim should be dismissed because he failed to state a claim that is outside the purview of the LEDL, Title VII, and the ADA; and

- Tonya's loss of consortium claim should be dismissed because it is a derivative tort claim wherein the underlying tort claims are without merit and Plaintiffs failed to plead any facts to support this claim.

(Doc. 16-1 at 2–3.) Each of these arguments will be addressed in turn below.

Additionally, the Court notes that in their opposition memorandum, Plaintiffs make numerous factual allegations not contained in the *Complaint*. "When deciding a motion to dismiss, the Court may not consider factual allegations raised for the first time in an opposition memorandum." *McClaine v. Boeing Co.,* No. 11-2447, 2013 WL 1155223, at *3 (E.D. La. Mar. 19, 2013), *aff'd*, 544 F. App'x 474 (5th Cir. 2013) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' ") (quoting Fed. R. Civ. P. 8(a)(2)).

### A.  Failure to Plead Exhaustion

#### 1. Parties' Arguments

Defendant first argues that Oris' Title VII and ADA claims are subject to dismissal due to his failure to plead exhaustion of administrative remedies. (Doc. 16-1 at 6.) Defendant points out

that the Complaint lacks any assertion that Oris filed an EEOC charge or received a right to sue letter before bringing this suit. (*Id.*)

In opposition, Plaintiffs argue that Oris has complied with Title VII and the ADA's administrative exhaustion requirements. (Doc. 25 at 5.) Although not alleged in the Complaint, Oris "can adequately plead exhaustion" because he: (1) filed a complaint with the EEOC on September 19, 2019; (2) received his right to sue letter on October 17, 2019; and (3) within 90 days of receiving that letter, filed this suit on January 15, 2020. (*Id.* at 5–6.)

In reply, Defendant reiterates that the Complaint fails to make "any reference to the submission of, investigation of, or dismissal (with a right-to-sue notice) of the requisite administrative charge for a Title VII or ADA claim of discrimination [. . .]" (Doc. 27 at 2.) Thus, Oris failed to adequately plead exhaustion, and his Title VII and ADA claims must be dismissed. (*Id.*)

## 2. Applicable Law and Analysis

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin ..." 42 U.S.C. § 2000e-2(a).  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employment compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Before pursuing a claim under either statute, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC.[1] *Owens v. Dallas Cty. Cmty. Coll. Dist*., 793 F. App'x 298, 300 (5th Cir. 2019); *Taylor v. Books a Million, Inc.,* 296 F.3d 376, 378-79 (5th Cir. 2002). A judicial complaint that does not allege the exhaustion of administrative remedies is subject to dismissal. *Williams v. Franciscan Missionaries of Our Lady Health Sys., Inc.*, No. 18-323, 2020 WL 798276, at \*11 (M.D. La. Feb. 18, 2020) (deGravelles, J.).

If a plaintiff files a charge with the EEOC, the scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge[.]" *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir. 1984).

Here, the *Complaint* lacks any allegations pertaining to Oris filing a complaint with the EEOC or receiving a right to sue letter. Although Plaintiffs argue in their opposition brief that Oris filed a charge of discrimination with the EEOC and received a right to sue letter (*see* Doc. 25 at 5–6), such assertions bear no weight on the outcome of the instant motion. *See Lone Star,* 594 F.3d at 387. Therefore, the Court finds that Oris' claims under Title VII and the ADA are subject to dismissal for failure to adequately plead exhaustion of remedies. However, as discussed in more detail below, the Court will grant Plaintiffs leave to amend their *Complaint* to cure these deficiencies.

---

[1] Before filing suit against an employer for a violation of the ADA, an employee must comply with the ADA's administrative prerequisites. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 15-1413, 2015 WL 9269416, at \*4 (N.D. Tex. Dec. 21, 2015). The ADA incorporates by reference the procedures applicable to actions under Title VII, including the requirement that a plaintiff must file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice, and receive a "right to sue" letter before filing suit. *See Dao*, 96 F.3d at 789 (citing 42 U.S.C. §§ 12117(a), 2000e-5(e)(1)).

### B. Failure to State a Discrimination Claim

### 1. Under Title VII and the LEDL

### a. Parties Arguments

Defendant argues that Oris' discrimination claims are also subject to dismissal due to the failure to allege sufficient facts to state a claim for relief under Title VII and the LEDL. (Doc. 16-1 at 6.) Defendant first points out that "the Complaint fails to even identify whether [Oris] was a member of a protected class, as it lacks any factual information about [his] race or religious beliefs." (*Id.* at 7.) Defendant then addresses Oris' religious discrimination claim, which it argues is deficient in that he fails to allege that he suffered an adverse employment action due to his religion or that others outside his protected class were treated more favorably. (*Id.*) "[T]he only factual allegations in the Complaint that reference [Oris'] religion or any alleged adverse action is the claim he was called 'Holy Ghost Brother' or 'Preacher Man' – a far cry from an adverse employment action." (*Id.*) As to Oris' race discrimination claim, Defendant contends that it is "similarly lacking" because "[t]he Complaint makes no more than a bare conclusory statement that [Oris] was 'paid less money for the same job title [than] similarly situated white employees were paid.' " (*Id.*)

In opposition, Oris argues he can establish factual allegations sufficient to support race and religious discrimination claims under Title VII and the LEDL. (Doc. 25 at 6.) As to religious discrimination, Oris argues the terms "Holy Ghost Brother" and "Preacher Man" were not used in a complimentary manner, but instead were used to make mockery of his religious beliefs. (*Id.* at 6–7.)[2]

---

[2] In opposition, Oris also argues that he can make out a *prima facie* case of religious discrimination because: (1) he has a bona fide religious belief that "requires that he minister to others about the love of Jesus," which is prohibited by Defendant's workplace policy; (2) he "openly informed the Defendant of his religious beliefs in a meeting with supervisors and other lead operators;" and (3) he was terminated within weeks of that meeting. (Doc. 25 at 6–8.)

Additionally, Oris argues he can establish a *prima facie* case of racial discrimination because: (1) he is a black man and thus, a member of a protected class; (2) he was qualified for the position of lead operator based on his approximately seven years of experience; (3) he was subjected to adverse employment action in that he was prohibited from obtaining any overtime and was required to clock out for lunch; and (4) other similarly situated employees outside of his protected class were allowed to acquire overtime and were never required to clock out for lunch. (*Id.* at 8–9.)[3]

In response, Defendant re-urges that Oris has failed to state a claim for religious or racial discrimination. (Doc. 27 at 3.) According to Defendant, Oris' race discrimination claims are insufficient because he fails to plead any facts about how or why his job change to a laboratory position was a demotion; fails to plead any facts as to when any alleged discriminatory action occurred; and fails to plead sufficient facts regarding any similarly situated individual who was treated more favorably. (*Id.* at 3–4.) As to the religious discrimination claims, Defendant argues that Plaintiffs "vaguely allege" that Oris was called "Holy Ghost Brother" or "Preacher Man," but they "fail to identify or plead specific dates as part of these allegations." (*Id.* at 4.)

Defendant also objects to Plaintiffs' inclusion of numerous new factual allegations in their opposition brief, which it contends are belated, not appropriately raised in their Complaint, and subject to dismissal "to the extent any of Plaintiffs' allegations exceed the scope of the underlying administrative charge[.]" (*Id.* at 5.) In sum, "Plaintiffs make nothing but [conclusory] statements

However, these allegations were not included in the *Complaint*, and therefore are not relevant to the determination of the instant motion. *Lone Star,* 594 F.3d at 387.

[3] Plaintiffs describe in detail other examples of racial discrimination in their opposition brief. (*See* Doc. 25 at 8–12.) The Court also notes that Plaintiffs allege numerous new facts related to a hostile work environment claim. (*See id.*) Again, because none of these allegations were included in the *Complaint*, the Court will not consider them. *Lone Star,* 594 F.3d at 387.

alleging discrimination on the basis of race and religion" and therefore, these claims must be dismissed. (*Id.*)[4]

### b.  Applicable Law

A plaintiff does not have to plead a *prima facie* case to state a plausible claim of discrimination in order to survive a Rule 12(b)(6) motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). The requirements for a *prima facie* case, however, provide useful guideposts for determining whether a plaintiff has pled a plausible claim. Still, no plaintiff is exempt from her obligation to "allege facts sufficient to state all the elements of her claim." *Puente v. Ridge*, 324 F. App'x 423, 427–28 (5th Cir. 2009); *Mitchell v. Crescent River Port Pilots Ass'n,* 265 F. App'x 363, 370 (5th Cir. 2008).

Under Title VII, a *prima facie* case of racial discrimination is established once the plaintiff has proven: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone outside the protected class; or in the case of disparate treatment, others similarly situated were treated more favorably. *Minnis v. Bd. of Sup'rs of La. State Univ. & Agric. & Mech. College*, 55 F. Supp. 3d 864, 875 (M.D. La. 2014) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)).

To establish a *prima facie* case of religious discrimination under Title VII, a plaintiff must present evidence that: (1) he held a bona fide religious belief, (2) his belief conflicted with a requirement of his employment, (3) his employer was informed of his belief, and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement.

---

[4] Defendant also notes that "Plaintiffs' conclusory allegation that Plaintiff Oris was subjected to a hostile work environment [on] account of his race still is not plead sufficiently. Plaintiffs' new allegations, which are not admissible in response to the Motion to Dismiss, are actually allegations supporting a separate and discrete cause of action that is likely time-barred." (Doc. 27 at 4.)

*Mitchell v. Am. Eagle Airlines, Inc.*, No. 15-757, 2017 WL 2588597, at *5 (M.D. La. June 14, 2017) (citing *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014)).

The same requirements apply to Plaintiffs' claims under La. R.S. 23:301 *et seq*. "Louisiana state courts routinely look to federal jurisprudence, including Title VII, to interpret Louisiana's anti-discrimination laws." *Minnis*, 55 F. Supp. 3d at 884-85 (citing *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)). Therefore, the analysis applicable to Oris' Title VII claims also governs his state law claims.

### c.  Analysis

Here, the Court finds that Oris has failed to state a claim for race or religious discrimination under Title VII and the LEDL. Specifically, his racial discrimination claim fails because he did not allege that he is a member of a protected class.  He also has not alleged facts showing that similarly situated individuals outside of his protected class were treated more favorably under nearly identical circumstances. Oris' assertion that he "was paid less money for the same job title [than] similarly situated white employees were paid" is conclusory and unsupported by factual allegations in the *Complaint. (Compl. ¶* 24, Doc. 1.) Likewise, his allegations that he was "required to adhere to different company policies compared to other employees" in that he "was required to punch out for lunch, while other employees were not" and that he "was not allowed to take advantage of…. overtime" are also conclusory. (*Compl. ¶¶* 21–22, Doc. 1.)

A similar result follows for Oris' religious discrimination claims. The only allegation in the *Complaint* related to these claims is that on multiple occasions he was called "Holy Ghost Brother" or "Preacher Man," in an attempt to make a mockery of his religious beliefs. (*Compl. ¶* 20, Doc. 1.) However, this single allegation is insufficient to withstand Defendant's motion to dismiss as it makes no mention of Oris' religion, fails to allege how his unidentified religious belief

conflicted with a requirement of his employer, or that he suffered an adverse employment action for failing to comply with any conflicting employment requirement.

Because Oris' claims under Title VII fail, his state law claims under the LEDL also fail. Accordingly, Oris' claims for race and religious discrimination under Title VII and the LEDL are dismissed.[5]

### 2. Under the ADA and the LEDL

#### a. Parties Arguments

Defendant next argues that Plaintiffs' failed to state a claim for disability discrimination. It contends that the Complaint is devoid of any factual allegations demonstrating that Oris: (1) has a disability; (2) was qualified for his job; (3) was replaced by anyone, "let alone a nondisabled employee"; or (4) was treated less favorably than nondisabled employees as it does "not even contrast the treatment [Oris] allegedly received against the treatment a nondisabled counterpart received." (Doc. 16-1 at 8.) Instead, Oris' disability discrimination claim rests solely on the "bare assertion that he 'was treated differently than [other] employees who were similarly situated and treated cruelly as well as ridiculed on the basis of [ ] allegedly having a disability.' " (*Id.* at 8–9 (quoting *Compl.* ¶ 32, Doc. 1).)

In opposition, Plaintiffs argue that they have alleged sufficient factual support to state a claim for disability discrimination. (Doc. 25 at 12.) Specifically, Plaintiffs claim that Oris suffered an adverse employment decision when "he was demoted from his title as Lead" operator after "returning from medical leave in 2019." (*Id.* at 14.) Plaintiffs also rely on his supervisor's

---

[5] Plaintiffs' also allege that Oris "was subjected to a retaliatory and hostile work environment." (*Compl.* ¶¶ 11, 15 Doc. 1.) To the extent that these allegations can be construed as stating a claim for hostile work environment, this claim is likewise dismissed. Again, Oris does not allege that he is a member of a protected class nor does he allege any details regarding the severity or pervasiveness of the alleged "harassment." *See Corley v. Louisiana ex rel. Div. of Admin., Off. of Risk Mgmt.,* 498 F. App'x 448, 450 (5th Cir. 2012). He also does not clarify how the putative harassment affected a term, condition, or privilege of his employment. *Id.* In sum, these vague conclusory allegations are insufficient to state a valid Title VII claim for hostile work environment.

statement that Oris was on mood medication and mentally unstable to establish that he was "regarded as having an impairment" under the ADA. (*Id*. at 14–15.)[6]

In response, Defendant reiterates its earlier argument that Plaintiffs have not and cannot set forth an actionable discrimination claim under the ADA. (Doc. 27 at 5.) Defendant asserts:

> Plaintiffs' own Opposition contradicts their allegations pertaining to Plaintiff Oris's alleged demotion. For example, on page 14, Plaintiffs claim Oris was demoted from Lead Operator to Primary Lab Personnel in 2019 (which was not asserted in the Complaint). However, Plaintiffs also allege the same demotion occurred in 2015 after a meeting with various supervisors, occurring after Oris's medical leave in June 2015. Additionally, Plaintiffs admit that the [ ] "incident" in 2015 was isolated, and therefore, any such alleged act would be time-barred in the instant action.

(*Id.*) As a result, Defendant concludes that Plaintiffs have failed to plead the requisite *prima facie* elements of discrimination under the ADA. (*Id.*)

### b. Applicable Law and Analysis

" 'The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability," by, among other things, terminating an individual's employment.' " *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *Delaval v. PTech Drilling Tubulars, LLC,* 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original) (quoting 42 U.S.C. § 12112(a))). " 'To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability.' " *Id.* (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original)).

---

[6] In opposition, Oris alleges that he can make out a *prima facie* case of disability discrimination. First, he argues he is disabled within the meaning of the ADA because he has gastroparesis and adhesive capsulitis (or "frozen shoulder"). (Doc. 25 at 12–14.) Additionally, he alleges that he has a "perceived mental impairment, as indicated by the Defendant's actions." (*Id*. at 14–15.) Second, he argues that his disability did not affect his ability to perform the essential functions of his job. (*Id*. at 13–15.) Third, Oris asserts that he was subject to an adverse employment decision on account of his disability. (*Id*.) Plaintiffs detail allegations in support of these contentions. (*See id.* at 12–15.) However, these allegations were not included in the *Complaint*, and therefore are not relevant to the determination of the instant motion. *Lone Star*, 594 F.3d at 387.

Additionally, "the Louisiana Employment Discrimination statute is essentially patterned after the ADA[.]" *Mincey v. Dow Chem. Co.*, 217 F. Supp. 2d 737, 742 (M.D. La. 2002). Consequently, "the result of this Court's analysis under either statute must, necessarily, be the same." *Id.*

Here, Oris failed to state a claim under the ADA because he did not allege that he has a disability. The ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such impairment; or (3) being regarded as having an impairment. 42 U.S.C. § 12102(1). Notably, the *Complaint* fails to specify whether Oris had a physical or a mental disability, what the disability was, or how it impaired a major life activity. *See* 42 U.S.C. § 12102(1)(A). It follows that Oris has also failed to allege that he suffered an adverse employment decision on account of his disability, since he fails to identify any such disability. Consequently, the Court finds that Oris' failure to identify any alleged disability is fatal to his ability to withstand Defendant's motion to dismiss. Accordingly, Oris' claims for disability discrimination under the ADA and the LEDL are dismissed.

### C. Louisiana Whistleblower Statute

#### 1. Parties Arguments

Defendant next argues that Plaintiffs' have failed to state a claim under the Louisiana Whistleblower Statute. (Doc. 16-1 at 9.) According to Defendant, the Complaint is "completely devoid of any alleged facts" establishing: (a) what state laws were allegedly violated; (b) what Oris allegedly reported to his supervisor; or (c) how and why he suffered a "reprisal" as a result. (*Id.*)

In opposition, Plaintiffs argue that Defendant violated La. R.S. 23:13 which requires employers to "furnish employment which shall be reasonably safe for the employees therein."

14

(Doc. 25 at 16.)[7]  In response, Defendant reiterates that Plaintiffs failed to "point to an alleged violation of state law in their Complaint," and therefore it is subject to dismissal. (Doc. 27 at 6−7.) It notes again that Plaintiffs cannot cure deficiencies in their Complaint "by simply opposing the Motion to Dismiss."  (*Id.* at 6 (citing *McClaine*, 2013 WL 1155223, at *3).)

## 2. Applicable Law and Analysis

"Louisiana's Whistleblower Act forbids retaliation when [an] employee 'in good faith, and after advising the employer of the violation ..., [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law.' " *Herster v. Bd. of Sup'rs of Louisiana State Univ.*, 72 F. Supp. 3d 627, 647 (M.D. La. 2014) (quoting La. R.S. 23:967(A)). This Court has recognized that:

> The Act has five elements: 1) a workplace act or practice violates state law, 2) the employee informed his employer of the violation of state law, 3) the employee disclosed or threatened to disclose the violation, 4) the employee suffered an adverse employment action, and 5) the adverse employment action was suffered as a result of his whistleblowing activity.

*Id.* (citation and quotation omitted).

Additionally, the Fifth Circuit explained the requirement to disclose a violation of state law as follows:

> [La. R.S.] § 23:967 protects employees who disclose or threaten to disclose an act or practice at their place of employment that violates of [sic] state law. To state a claim under [La. R.S.] § 23:967, a plaintiff must allege the violation of state law. Nowhere in his amended complaint does [the plaintiff] indicate which state law, if any, was violated by [the defendant] and therefore he fails to state a claim under [La. R.S.] § 23:967.

---

[7] In opposition, Oris describes instances whereby Defendant violated La. R.S. 23:13 and he reported that violation. (Doc. 25 at 16–17.) However, those instances are not included in the *Complaint* and thus bear no weight on Defendant's Motion to Dismiss. *Lone Star,* 594 F.3d at 387.

*Ware v. CLECO Power LLC*, 90 F. App'x 705, 709 (5th Cir. 2004) (citing *Puig v. Greater New Orleans Expressway Comm'n*, 772 So. 2d 842, 845 (La. App. 5 Cir. 2000)). *See also*, *Genella v. Renaissance Media*, 115 F. App'x 650, 652 (5th Cir. 2004).

Here, the only allegations in the *Complaint* related to this claim are that Oris disclosed "various workplace acts that were in violation of state law" and "was retaliated against as a result of him reporting obviously known violations of [Defendant's] policy to his immediate supervisor." (*Compl.* ¶¶ 35, 36, Doc. 1.)  As such, Plaintiffs failed to plead any specific violation of state law in their *Complaint*. Plaintiffs also failed to plead facts to support that Oris suffered an adverse employment action as a result of his whistleblowing activities. Accordingly, this claim is dismissed.

### D.  Defamation

#### 1. Parties Arguments

Next, Defendant argues that Oris' defamation claims are subject to dismissal due to his failure to identify and include the alleged false and defamatory statements in the Complaint. (Doc. 16-1 at 10.) Additionally, Defendant asserts that Plaintiffs have admitted "that at least some of the statements made by [Oris'] supervisor were true[.]" (*Id.* (citing *Compl.* ¶ 18, Doc. 1).)  Defendant also notes that it is unclear from the Complaint "whether they are asserting one claim of defamation in the alternative (either by implication or per se) or two separate and distinct claims – and whether the claim(s) are about the same or different alleged statements." (*Id.*)

In opposition, Oris argues he may recover for defamation per se, based on his supervisor's statement during a meeting with other employees that he "was on 'mood medicine and so mentally unstable' that he could not work the line." (Doc. 25 at 18–19.)[8]  Oris asserts that this statement

---

[8] Again, Plaintiffs describe multiple other occasions in which Defendant employees allegedly made defamatory statements. For example, Plaintiffs allege that in 2015 Oris' supervisors expressed to other members of management

was not only "unprofessional and distasteful, but it was also false as it was not portrayed in his personnel record as such." (*Id.* at 19.)

Oris argues that he may also recover for defamation by innuendo based on the above statement "because there is a slight truth to [it] though it carried a false defamatory implication." (*Id.*)[9] Oris was "prescribed medicine to help deal with the stresses of the workplace, however, there was never any record or documentation that [he] was mentally unstable and could not perform pursuant to his job description." (*Id.*) Additionally, Oris asserts that statements made about his termination in 2019 were defamatory:

> Plaintiff was informed by other employees that he was terminated over the phone, because management expressed to the employees that it did not want to terminate the Plaintiff in person due to his alleged mental instability. Further, it was expressed that the Plaintiff was terminated by phone to ensure that he would not "blow up the place". These statements were made despite the Plaintiff informing his supervisor that he was not mentally unstable. This was another attempt to further destroy and ruin the Plaintiff's character and reputation. The Plaintiff was held out in the community as mentally unstable to adequately perform his duties, and thus susceptible to ridicule and contempt from fellow Genesis personnel.

(*Id.* at 20.)

In response, Defendant argues that Plaintiffs "have not properly plead facts that satisfy the requisite elements" to "state a claim for defamation (either by innuendo or per se)," and that "[t]he inability to establish any element of a defamation claim invalidates the claim under Louisiana law." (Doc. 27 at 7.)

## 2. Applicable Law

Here, Oris raises two related, yet distinct claims under Louisiana law: defamation per se and defamation by innuendo. In order to prevail on a defamation per se claim, a plaintiff must

---

that he was stealing time. (*See* Doc. 25 at 18−20.) However, these alleged instances of defamation were not plead in the *Complaint* and, as such they bear no weight on this Motion to Dismiss. *Lone Star,* 594 F.3d at 387.

[9] Plaintiffs expand their allegations related to this statement in their opposition brief, which the Court will not consider for purposes of this motion.

prove the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99), 737 So. 2d 706, 715; *Porter v. Dauthier*, No. 14-41, 2014 WL 6674468, at *5 (M.D. La. Nov. 25, 2014) (citing *Trentecosta v. Beck*; 96-2388 (La. 10/21/97), 703 So. 2d 552, 559).

By contrast, defamation by innuendo "occurs when one publishes *truthful* statements of fact and those truthful facts carry a false defamatory implication about another ... In other words, defamatory meaning can be insinuated from an otherwise true communication." *In re Baxter*, No. 01-26, 2001 WL 34806203, at *16 (W.D. La. Dec. 20, 2001) (quoting *Fitzgerald*, 737 So. 2d at 717 (internal quotation marks and citations omitted)).

The publication element of both claims "does not require that the defamatory comment be published to the general public, but is satisfied by communication to a person other than the one defamed." *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *5 (E.D. La. Mar. 20, 2001) (quoting *Com. Union Ins. Co. v. Melikyan,* 424 So. 2d 1114 (La. App. 1st Cir. 1982)). Under Louisiana law, communication between officers and agents of the same corporation, and in relation to their duties for the corporation cannot be construed as communication to a third party for purposes of establishing the "publication" element of a defamation action. *Id.* Notably, failure to prove any element invalidates a defamation claim. *Weber*, 2001 WL 274518, at *5 (citing *Estiverne v. Louisiana State Bar Assoc.,* 863 F.2d 371, 374 (5th Cir. 1989)).

### 3. Analysis

The Court finds that Oris has failed to state a claim for defamation per se and by innuendo under Louisiana law due to Plaintiffs failure to properly identify the allegedly defamatory statements in the *Complaint*; failure to designate whether any of the allegedly defamatory

statements were true or false; and failure to identify what statements are associated with what theory of recovery.

Specifically, as to defamation per se, Plaintiffs do not adequately plead that any of the allegedly defamatory statements were false. While the *Complaint* generally alleges that Defendant is "liable for making certain false statements to other Genesis Energy employees," it also admits the truth of at least some of the statements. (*See Compl.* ¶¶ 18, 43, Doc. 1 (alleging that Oris' supervisor stated during a meeting with other employees that he was "on mood medication" and "mentally unstable," but also admitting that "some of [that] statement was untrue.").)

Likewise, as to defamation by innuendo, Plaintiffs have not plead that any allegedly defamatory statements contained truthful statements of fact. By admitting the truth of at least some of the statements (*Compl.* ¶ 18, Doc. 1), Plaintiffs imply that others were false and thus not properly brought under a theory of defamation by innuendo. In fact, the *Complaint* fails to state that Defendant made any truthful statements at all, instead alleging that, "Genesis Energy is liable for providing false statements to other employees of Genesis Energy which were clearly intended to result in false and defamatory innuendo." (*Id.* ¶ 41.)

Further, the statements Oris appears to rely on in support of his defamation claims were made by employees of Defendant to other employees of Defendant. Nothing in the *Complaint* alleges that any statements were not made within the course and scope of Defendant employees' employment. *Com. Union Ins. Co. v. Melikyan*, 424 So. 2d 1114, 1115 (La. Ct. App. 1982) (finding that a party failed to state a claim for defamation due to failure to allege that the defamatory statement was not within the course and scope of the claims managers' employment); *Iqbal,* 129 S. Ct. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.' ") (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, Oris' defamation claims must be dismissed.

### E.  Intentional Infliction of Emotional Distress

#### 1. Parties Arguments

Defendant argues that the allegations in the Complaint, even taken as true, do not support a claim for intentional infliction of emotional distress under Louisiana law. (Doc. 16-1 at 11.) Defendant asserts that the allegations Plaintiffs rely on to support this claim "are indicative of nothing more than a routine employment dispute." (*Id.*)

In opposition, Plaintiffs argue that Defendant is liable for intentional infliction of emotional distress, because Oris was repeatedly harassed at work over the five years in which he was employed by Defendant. (Doc. 25 at 21.) In support of this, Plaintiffs point to the following factual allegations: (a) that "Defendant exposed [Oris'] medical history in front of management and fellow employees, stating that [Oris] was unstable and on mood medication"; (b) that Defendant "would not allow [Oris] to partake in overtime"; and (c) that Defendant "mocked [Oris'] religion by calling him names, and thus subjecting him to ridicule." (*Id.* at 21–22.) Based on these allegations, Oris asserts that "Defendant desired to inflict severe emotional distress by deliberately embarrassing and harassing [him] in front of Genesis personnel" and ultimately did so. (*Id.* at 23.) [10]

In response, Defendant reiterates that Plaintiffs' have failed to plead sufficient facts to state a claim for intentional infliction of emotional distress. (Doc. 27 at 7–8 (quoting *Bertaut v. Folger Coffee Co.,* No. 06-2437, 2006 WL 2513175, at *4 (E.D. La. Aug. 29, 2006) ("[e]mployment

---

[10] Plaintiffs also describe instances in support of Oris' intentional infliction of emotional distress claim, that were not included in the *Complaint* and therefore, are not relevant to the determination of the instant motion. (*See* Doc. 25 at 21–24.) *Lone Star,* 594 F.3d at 387.

disputes, even those involving discrimination and harassment, will rarely rise to the level of intentional infliction of emotional distress.")).)

## 2. Applicable Law

In Louisiana, intentional infliction of emotional distress constitutes: "(1) extreme and outrageous conduct by the defendant; (2) severe emotional distress suffered by the plaintiff; and (3) the intent by the defendant to inflict severe emotional distress or the knowledge that severe emotional distress was certain or substantially certain to result from the defendant's conduct." *Gressett v. Southwest Airlines Co.*, 216 F. Supp. 3d 743, 748 (E.D. La. 2016) (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).  All three elements are required for a viable intentional infliction of emotional distress claim. *Id.*

"Louisiana's 'jurisprudence has limited the cause of action in the workplace setting to cases which involve a pattern of deliberate, repeated harassment over a period of time.' " *Dupart v. Savage Servs. Corp.*, No. 19-203, 2019 WL 718734, at *3 (E.D. La. Feb. 20, 2019) (citing *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 14 (La. 8/31/00), 765 So. 2d 1017, 1026).  "Conduct which is merely tortuous or illegal does not rise to the level of being extreme and outrageous." *Nicholas*, 765 So. 2d at 1025.  Indeed, "courts require truly outrageous conduct before allowing a claim for intentional infliction of emotional distress even to be presented to a jury." *Id.* at 1024–25.  And, importantly, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White*, 585 So. 2d at 1209.  Instead, conduct giving rise to liability "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

### 3. Analysis

The Court finds that Oris failed to state a claim for intentional infliction of emotional distress under Louisiana law. Again, Oris relies on the following allegations to support his intentional infliction of emotional distress claim: that Defendant exposed his medical history in front of management and fellow employees; stated that Plaintiff was unstable and on mood medication; that Defendant would not allow Plaintiff to partake in overtime; and that Defendant mocked Plaintiff's religion by calling him names.

However, with respect to the allegations that he was called "Preacher Man" and "Holy Ghost Brother" and not allowing him to participate in overtime, these instances do not rise to the level of intentional infliction of emotional distress as the threshold for outrageous conduct is high. For example, in *Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc*., No. 10-584, 2011 WL 6046984, at *4 (M.D. La. Dec. 6, 2011), the court granted the defendant's motion to dismiss the plaintiff's intentional infliction of emotional distress claims because they did not rise to the level of outrageous conduct. In that case, the plaintiff alleged that she heard a racial slur, was ordered to meet with supervisors, that her schedule was changed, that her supervisor questioned her tardiness, and that her coworkers avoided her. *Id*. Similarly, in *Baker v. FedEx Ground Package System, Inc.,* 278 F. App'x 322, 324 n.1 (5th Cir. 2008), the court affirmed the denial of a claim for intentional infliction of emotional distress where the plaintiff asserted that a coworker subjected her to "several racially insensitive comments" based on her race, including that "she did not want to work with people like" plaintiff, an African-American female, and telling her that "whites rule" and "this should be a lesson, Blacks cannot report to whites."

The Court acknowledges that *Baker* was dismissed on summary judgment, not pursuant to a Rule 12(b)(6) motion. However, it accurately reflects the high degree of outrageous behavior

necessary to establish a claim for intentional infliction of emotional distress. Like the district court in *Wilson-Robinson,* this Court concludes that Oris' allegations are insufficient to establish extreme and outrageous conduct sufficient for a claim of intentional infliction of emotional distress.

Divulging Oris' medical records to fellow employees and stating he "was on mood medication" and "mentally unstable" is a much closer case. However, the Court need not make a finding that this does or does not rise to the level of requisite outrageous conduct since Oris has failed to sufficiently allege that Defendant acted with the intent to inflict severe emotional distress or with the knowledge that severe emotional distress was certain or substantially certain to result from the above conduct and that Oris suffered severe emotional distress as a result of the above. Therefore, the Court dismisses Oris' claim for intentional infliction of emotional distress.

### F.  Loss of Consortium

#### 1. Parties Arguments

Finally, Defendant argues that because Oris' primary claim for intentional infliction of emotional distress fails as a matter of law, Plaintiffs' derivative claims for loss of consortium also fail. (Doc. 16-1 at 12.)  In opposition, Plaintiffs argue that Oris has sufficiently stated a claim for intentional infliction of emotional distress, and as such, Plaintiffs' loss of consortium claims can be maintained. (Doc. 25 at 24.)[11]

#### 2. Applicable Law and Analysis

A loss of consortium claim is a derivative claim and cannot be maintained if the primary claim is not viable as a matter of law. *Ferrell v. Fireman's Fund Ins. Co.*, 696 So. 2d 569, 576 (La.

---

[11] Plaintiffs again make numerous factual allegations in their opposition memorandum that were not contained in the *Complaint*.  "When deciding a motion to dismiss, the Court may not consider factual allegations raised for the first time in an opposition memorandum." *McClaine,* 2013 WL 1155223, at *3. As such, these allegations are considered in connection with the instant motion.

1997); *Salard v. Lowe's Home Centers, Inc.*, 904 F. Supp. 569, 572-73 (W.D. La. 1995) (noting

that there is no direct statutory or jurisprudential basis for consortium damages for employment

torts under state and/or federal law, and that Louisiana courts are cautious to extend consortium

damages for non-physical torts, such as defamation as noted by the Louisiana Fourth Circuit Court

of Appeals wherein the court held that there was "no basis to disallow recovery of damages for

loss of consortium, provided for in Article 2315, in a defamation case in which the defamed person

was alive at the time the defamatory act occurred." (citing *Maurice v. Snell*, 632 So. 2d 393, 396

(La. Ct. App.), *writ denied*, 637 So. 2d 507 (La. 1994)). Given that Oris' other state law claims

have been dismissed, Plaintiffs' derivative claims for loss of consortium must also be.

### G.  Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every

opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220

F.2d 480, 482 (5th Cir. 1955).  The Fifth Circuit has further stated: "In view of the consequences

of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the

sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure

pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or

the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will

avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329

(5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas

articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff
> at least one chance to amend before dismissing the action with prejudice unless it
> is clear that the defects in the complaint are incurable. *See Great Plains Trust Co.
> v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also*

*United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

Finally, one leading treatise explained:

As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, even though all of Plaintiffs' claims are insufficient at this time, it is not absolutely clear that the deficiencies in the *Complaint* are "incurable," and there is no indication from Plaintiffs that they are unable or unwilling to amend the *Complaint*. There is also no showing that an amendment would be frivolous.

Further, while Plaintiffs have not yet requested an opportunity to amend, the Court nonetheless has inherent power to order such an amendment. *See McClellon,* 66 F.3d at 100 (quoting the magistrate judge's *sua sponte* order requiring an amended complaint). The appropriate remedy when granting a motion to dismiss based on deficient pleadings is to grant the complainant time to amend the complaint; if the complainant fails to do so, then the district court may strike the pleadings or dismiss the case. *McClellon*, 66 F.3d at 103. Thus, in the interest of justice and of orderly procedure, the Court will allow Plaintiffs an opportunity to amend their complaint. *E.g. Neal v. State of Ga.,* 469 F.2d 446, 448-50 (5th Cir. 1972) (reasoning that the trial court should have allowed amendment under 28 U.S.C. § 1653).

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 16) filed by Defendant Genesis Energy, LLC is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiffs' claims against Defendant are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall be given twenty-eight (28) days in which to cure the operative complaint of these deficiencies.  Failure to do so will result in the dismissal of these claims with prejudice.

Signed in Baton Rouge, Louisiana, on March 31, 2021.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**