| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>MIDDLE DISTRICT OF LOUISIANA | Civil Action: 3:20-cv-00035JWD- EWD |
| ORIS WILLIAMS<br>VERSUS | JUDGE: JOHN W. DEGRAVELLES<br>JURY TRIAL REQUESTED |
| GENESIS ENERGY, LLC. | MAGISRATE: Erin Wilder-Doomes |

*****************************************************************************

## TABLE OF CONTENTS

**Page**

NATURE OF ACTION

PARTIES

JURISDICTION AND VENUE

FACTUAL ALLEGATIONS

STATEMENT FOR RELIEF

CAUSE OF ACTION

PRAYER FOR RELIEF

## FIRST AMENDED COMPLAINT

ORIS WILLIAMS and TONYA WILLIAMS, through the undersigned, for their Complaint herein against Genesis Energy, who alleges as follows:

## NATURE OF ACTION

This action arises under the United States Constitution. Specifically, the action arises under the Americans with Disabilities Act (ADA) 42 U.S.C. §12101 et.seq and Religious Discrimination (Title VII of the Civil Rights Act of 1964), in addition to several state law causes of actions. This action is also brought under 29 C.F.R. 1605.1 and the Louisiana Employment Discrimination Law (R.S. 23:301 et seq.). This action also arises under the Louisiana State Constitution, specifically Article X§12 and Articles I§8. Louisiana Revised Statute 23:301 et. seq. This action is also brought under the general tort principles set forth in the Louisiana Civil Code, including without limitation, Articles 2315 and 2320 and common law tort principles adopted by Louisiana courts.

1. Defendant's actionable conduct and omission of corrective action in connection with wrongful termination, disability discrimination and violation of the Civil Rights Act of 1964, and retaliation there from.

## PARTIES

2. The **PLAINTIFF, ORIS WILLIAMS**, is a resident of the UNITED STATES and of BAKER, LOUISIANA and is and was at all times relevant herein a resident of the parish of EAST BATON ROUGE, STATE OF LOUISIANA. All actions committed against the plaintiff were conducted in EAST BATON ROUGE PARISH, LOUISIANA.

3. **TONYA WILLIAMS**, is the spouse of ORIS WILLIAMS and is a resident of the UNITED STATES and of BAKER, LOUISIANA and is and was at all times relevant herein a resident of the parish of EAST BATON ROUGE, STATE OF LOUISIANA. All actions committed against the plaintiff were conducted in EAST BATON ROUGE PARISH, LOUISIANA.

4. The **DEFENDANT, GENESIS ENERGY, LLC** is a Limited Liability Company (Non-Louisiana), with its domicile in WILMINGTON, DELAWARE and its principal business office in HOUSTON, TEXAS.

## JURISIDCTION AND VENUE

5. Jurisdiction of this matter is based upon diversity of citizenship, 28 U.S.C. 1332, (a)(1) and the matter in controversy, exclusive of interest and cost, far exceed the sum of $75,000. Supplemental jurisdiction is conferred upon this court over the state claims pursuant to 28 U.S.C. § 1367(a).

6. Jurisdiction of this matter is also based upon federal question because this action has arisen under the laws of the United States pursuant to 42 U.S.C. §12101 et. seq. and Title VII of the Civil Rights Act.

7. Jurisdiction and venue are proper in that all acts and omissions complained herein occurred in the Parish of East Baton Rouge, State of Louisiana.

8. Named Defendant is justly and truly indebted to petitioners, ORIS WILLIAMS and TONYA WILLIAMS.

## FACTUAL ALLEGATIONS

1. On or about April 21, 2014, ORIS WILLIAMS (hereinafter referred to as "MR. WILLIAMS") began employment with Genesis Energy, LLC (hereinafter referred to as "GENESIS") as an Operator. MR. WILLIAMS worked for the GENEIS for approximately 5 years and was terminated on or about June 10, 2019 as a result of GENESIS' discriminatory, retaliatory and otherwise illegal and wrongful acts as discussed further in this complaint.

2. During MR. WILLIAMS' employment he possessed a good work record receiving favorable employment evaluations. MR. WILLIAMS eventually became classified as Lead Operator.

3. However, during the course of MR. WILLIAMS' latter years with GENESIS, he became subjected to multiple levels of wrongful and illegal treatment by GENESIS which was directly emanated by the discriminatory motives of GENEIS due to MR. WILLIAMS' race, disability and religious beliefs. Moreover, MR. WILLIAMS was further subjected to attacks on his character and reputation and was retaliated against as a result of whistleblower conduct.

4. MR. WILLIAMS was also subjected to racial discrimination while employed at GENESIS.

5. MR. WILLIAMS is an African American male and during his employment with GENESIS, he was treated differently from other white employees who were similarly situated to him.

6. Specifically, MR. WILLIAMS was paid less money for the same job title than similarly situated white employees were paid. Particularly, MR. WILLIAMS was paid $ 25/per hour while, upon information and belief, Andrew Manuel and Jeremy Senica, who were white employees and performed that same duties as MR. WILLIAMS, were being paid approximately $26 or more per hour.

7. Additionally, on one occasion, MR. WILLIAMS was written-up and suspended for improper hose disconnect procedure. The aforementioned procedure allowed oil to be released from

the belly valve to the railcar. Consequently, MR. WILLIAMS was accused of spilling oil. Subsequently, another white employee, Dustin Comeaux, also spilled oil as a result of leaving a hose connected to the train while it was operating, causing a more severe oil spill. However, Mr. Comeaux was never written up or suspended for the same conduct.

8. Moreover, MR. WILLIAMS was subjected to discrimination based on his disability.

9. Mr. WILLIAMS suffers from multiple disabilities that when flared and/or aggravated prevents MR. WILLIAMS from working and earning a living. MR. WILLIAMS was diagnosed and suffers with severe Depression disability and Gastroparesis disability.

10. Specifically, with regard to MR. WILLIAMS' disability, sometime between June 10, 2015 and June 15, 2015, while MR. WILLIAMS was on medical leave, GENESIS changed his employment status to a lower status or demotion of employment. Moreover, upon MR. WILLIAMS returning to work, GENESIS refused to comply with the doctor's limitations with regard to MR.WILLIAMS job duties.

11. Specifically, as a condition of returning back to work MR. WILLIAMS' doctor restricted his lifting of heavy items. Consequently, GENESIS refused to accept the doctor's restrictions and informed Mr. Williams that he could not report back to work.

12. Subsequently, MR. WILLIAMS confirmed with Human Resources that his job duties did not consist of any lifting and that these restrictions should not affect his returning to

work. Nevertheless, GENESIS declined to allow him back to work with the associated restrictions.

13. As a result, MR. WILLIAMS' doctor elected to remove the restrictions in an effort to allow MR. WILLIAMS to return to work; however, expressed reluctance in doing so.

14. Additionally, Bruce McGilroy, made a statement to the other employees, while in a company meeting, that MR. WILLIAMS was on mood medication and that he was mentally unstable. Specifically, Bruce McGilroy stated that MR. WILLIAMS was assigned and would remain the lab because of his mental instability.

15. Additionally, MR. WILLIAMS, who is a member of the Full Gospel religion, is required to minister and spread the gospel on a daily basis to others as needed and as requested. Moreover, MR.WILLIAMS religion prohibits him from being around impure and/or vulgar language. Accordingly, on several occasions, the employees at GENESIS were allowed to listen to certain music consisting of extreme vulgar language. Moreover, MR. WILLIAMS' religion prohibits him from participating and/or entertaining impure acts, such as pornography. Several employees were routinely viewing pornography while on the job and around MR.WILLIAMS.

16. Consequently, MR.WILLIAMS expressed his concern with regard to his religious beliefs and the aforementioned music and viewing of pornography. He further requested that this environment not be permitted in his presence since it was offensive and against his religion.

17. As a result, MR. WILLIAMS was called into a meeting to discuss his concerns. During the meeting, Bruce McGilroy informed MR. WILLIAMS that he could not discuss or express any of his religious beliefs on the job anymore. However, several other employees were still allowed to conduct actions associated with their religious beliefs, such as prayer. In particular, MR. WILLIAMS observed, on several occasions, instances where other employees, such as Wisdom Adikema along with others, were allowed to pray in the PCR building.

18. Consequently, MR. WILLIAMS was the only employee who was prohibited from discussing, practicing, and/or engaging in his religious practices on the job.

19. Moreover, MR. WILLIAMS' supervisors and/or other employees (at the direction of the supervisors) would make mockery of MR. WILLIAMS and on multiple occasions, MR. WILLIAMS was called such names as "Holy Ghost Brother" and "Preacher Man".

20. These names were not made to encourage MR. WILLIAMS, but were made in attempt to make mockery of MR. WILLIAMS' religious beliefs, despite the fact he could no longer discuss such beliefs with the same individuals who were making fun of him.

21. Mr. Williams was retaliated against because he reported violations and/or hazards to his supervisor, in violation of the whistleblower law.

22. Specifically, MR. WILLIAMS informed his supervisors of certain procedures that were in violation of OSHA and Environmental regulations, safety, and other hazardous regulations.

23. MR. WILLIAMS informed his supervisors that their waste disposal efforts were deficient because they were mixing different waste materials with other waste materials that were not supposed to be placed together. He also informed them that as a result of this waste, the vegetation was being adversely affected. Additionally, MR. WILLIAMS informed them of the improper air monitoring checks (MSA), which could result in plant explosion. Lastly, MR. WILLIAMS also expressed that certain samples were being contaminated by a leakage in the ceiling of lab.

24. Consequently, MR. WILLIAMS expressed that these violations could cause explosion of the plant and if these violations were known by environmental agencies, GENESIS would be liable and fined for these hazards

25. Consequently, MR. WILLIAMS was subjected to a retaliatory and hostile work environment.

26. MR. WILLIAMS was given increased responsibilities. In particular, MR. WILLIAMS was required to complete his daily tasks and responsibilities in addition to being invariably forced to complete the duties that would require at least three other employees to perform.

27. Such duties non-exhaustively included the clean-up of contaminated materials and hazardous liquids/spills, labeling materials, as well as creating various administrative spreadsheets.

28. All of the aforementioned additional duties further caused MR. WILLIAMS emotional distress because of the hostile work environment.

29. MR. WILLIAMS would undergo statements from his supervisor, such as, "You can do it…You are a superman…You can do handle it."

30. On several occasions, MR. WILLIAMS' work was subjected to sabotage by management and other GENESIS' employees (at the direction of management) in order to make MR. WILLIAMS feel as though he was losing his mind. Specifically, MR. WILLIAMS would discover that specific testing samples in which he was required to analyze would be missing. MR. WILLIAMS would later find these samples in various unconventional locations in the lab.

31. Moreover, on one occasion, MR. WILLIAMS observed two employees come into the lab and remove jiskoots with tags on them. Later, MR. WILLIAMS was questioned as to their whereabouts and perplexed when he discovered that they had been removed to the hazardous waste area outside of the lab.

32. MR. WILLIAMS was also required to adhere to different company policies compared to other employees. Specifically, MR. WILLIAMS was required to punch out for lunch, while other employees were not required to do so.

33. Moreover, MR. WILLIAMS was not allowed to take advantage of other employment privileges like overtime, even though his job duties were substantially increased.

34. Lastly, MR. WILLIAMS was accused of stealing time. Specifically, MR. WILLIAMS was asked to go to Wal-Mart to get a work related item. Upon his return, he was accused of going to Wal-Mart on the clock for personal reasons. Consequently, when MR. WILLIAMS expressed that he was asked to go to the store and provided the receipts for his purchases, he was still subject to adverse employment action. As a result of this allegation, MR. WILLIAMS was required to attend weekly Performance Improvement meetings.

35. MR. WILLIAMS' reputation has been slandered and damaged.

36. Sometime during MR. WILLIAMS' employment and during a meeting with several employees of GENEIS, MR. WILLIAMS' supervisor, Bruce McGilroy, made a statement to the participants that MR. WILLIAMS was on mood medication and that he was mentally unstable. These statements were made in violation of MR. WILLIAMS' HIPPA rights. Moreover, some of the statement was untrue. Specifically, at the time these statements were made, MR. WILLIAMS was no longer taking such medications. Moreover, MR. WILLIAMS was not mentally unstable.

37. As a result of this statement, MR. WILLIAMS was treated with disrespect by the other employees and was subject to the employees whispering and talking about him in a poor manner.

38. MR.WILLIAMS was informed by other employees of GENEIS that he was terminated over the phone because GENESIS management expressed to the employees that it did not want to terminate MR. WILLIAMS in person due to his alleged mental instability. Further, it was expressed that MR. WILLIAMS was terminated by phone to ensure that he would not "blow up the place".

39. These statements were made despite MR. WILLIAMS informing his supervisor that he was not mentally unstable. MR. WILLIAMS believes that these statements were made in attempt to further destroy and ruin his character and reputation as well as cause him severe mental anguish. As a result, MR. WILLIAMS had been extremely disturbed by the rumors circulating about him at GENEIS.

40. The discriminatory, retaliatory, and defamatory treatment by GENESIS has caused MR. WILLIAMS to suffer severe emotional distress and depression. MR. WILLIAMS has undergone months of psychological treatment and has experienced severe aggravation to his disabilities, such that MR. WILLIAMS has been unable to work.

41. MR. WILLIAMS and his wife TONYA WILLIAMS, as a result of GENESIS illegal actions, have suffered loss of consortium.

42. All exhaustive remedies have been satisfied as they relate to the allegations in this complaint. Specifically, MR. WILLIAMS timely filed a complaint with the EEOC asserting all claims alleged herein on September 19, 2019.

43. Subsequently, on or about October 15, 2019, the EEOC mailed its right to sue letter to MR. WILLIAMS and it was received by him on or about October 17, 2019. Moreover, MR. WILLIAMS timely filed the instant suit with the requisite 90 day receipt of the aforementioned EEOC right to sue letter on January 15, 2020.

44. Moreover, due to the interlacing and overlapping of the allegations relating to the multiple claims herein, it is intended that all allegations referenced herein are to relate to all claims, individually and in globo, to the extent needed to preserve the claim. The italicized headings are only to address readability.

**STATEMENT OF RELIEF**

**RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

27. The foregoing paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

28. It is unlawful discrimination in employment for an employer to engage in any of the following practices:

(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.

29. Genesis Energy's conduct alleged above constitutes discrimination based on religious and racial discrimination in violation of LEDL and Title VII. Mr. Williams was treated differently than other employees who were similarly situated to him and was called names on the basis of his religious beliefs and retaliatory motives.

### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT 42 U.S.C. §12101 ET SEQ

30. The foregoing paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

31. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

32. Genesis Energy's conduct alleged above constitutes discrimination based on disability discrimination in violation of the ADA. Mr. Williams was treated differently than other employees who were similarly situated and was treated cruelly as well as ridiculed on the basis of ORIS WILLIAMS having a disability.

### REPRISAL FOR ENGAGING IN PROTECTED ACTIVITIES RETALIATION AGAINST ORIS WILLIAMS LOUISIANA WHISTLEBLOWER LAW LA REVISED STATUTE 23:967, ET SEQ.

33. The foregoing paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

34. It is unlawful discrimination in employment for an employer to engage in any of the following practices:

   A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law: (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law; or

   B. Objects to or refuses to participate in an employment act or practice that is in violation of law.

35. ORIS WILLIAMS, in performing his job duties, was retaliated against as a result of him reporting obviously known violations of Genesis Energy's policy to his immediate supervisor. The stated reasons for Genesis Energy's conduct were not the true reasons, but instead were pretext to hide ORIS WILLIAMS' retaliatory animus.

36. Genesis Energy's conduct alleged above constitutes reprisal, in violation of Louisiana Whistleblower Law Revised Statute 23:967, against ORIS WILLIAMS based upon his disclosing various workplace acts that were in violation of state law.

### LOUISIANA EMPLOYMENT DISCRIMINATION LAW (LEDL) LA REVISED STATUTE 23:301, ET SEQ.

37. The foregoing paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

38. It is unlawful discrimination in employment for an employer to engage in any of the following practices:

   (2) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms,

conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.

39. Genesis Energy's conduct alleged above constitutes discrimination based on religious discrimination in violation of LEDL and Title VII. Mr. Williams was treated differently than other employees who were similarly situated to him and was called names on the basis of his religious beliefs.

## DEFAMATION BY INNUENDO

40. The foregoing paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

41. Genesis Energy is liable for providing false statements to other employees of Genesis Energy which were clearly intended to result in false and defamatory innuendo.

## DEFAMATION PER SE

42. The foregoing paragraphs are re-allege an incorporated by reference as though fully set forth herein.

43. Genesis Energy is also liable for making certain false statements to other Genesis Energy employees while abusing the power it possesses to refuse to address and correct concerns of state law violations with respect to company policies and procedures and participating and inciting other employees to participate in intentional acts that further purport the false statements for the purpose of irreparably maligning Mr. Williams' character and reputation.

44. As a direct and proximate result of the above referenced false and defamatory statements, Mr. Williams' personal reputation has suffered irreparable and incalculable harm.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS LOUISIANA CIVIL CODE ART. 2315 ET SEQ.

45. The foregoing paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

46. Genesis Energy's conduct, as set forth above, has been reckless, extreme and outrageous, beyond all possible bounds of human decency, and utterly intolerable in a legal and civilized society and work environment. ORIS WILLIAMS has suffered and continues to suffer severe emotional distress as a result of Genesis Energy's extreme, outrageous and reckless conduct, and Genesis Energy desired to inflict severe and deliberating emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct.

47. Defendant's actions have caused ORIS WILLAIMS to suffer mental and emotional distress, entitling him to compensatory damages pursuant to Title VII of Civil Rights Act and other discriminatory federal and state laws.

## DEMAND FOR PUNITIVE DAMAGES

48. Plaintiff is entitled to an award of punitive damages against Genesis Energy for its knowing intentional, malicious acts, or in the alternative, for its outrageous and reckless disregard of, and indifference to, the rights of Mr. Williams.

## DEMAND FOR ATTORNEY'S FEES AND COSTS

49. Mr. Williams is entitled to an award of all costs, including reasonable attorney's fees pursuant to all statement of relief and causes of actions stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that upon a trial hereof they be granted judgment against all named Defendants as follows:

A. Damages as allowed on each claim for relief and cause of action in an amount equal to their damages sustained, such amount being in excess of the current minimum required for federal court jurisdiction according to proof at the time of trial;

B. Punitive, Compensatory and exemplary damages;

C. All together with any interest, pre- and post-judgment, costs and disbursements; and attorney fees

D. Such other and further relief available under the law and this Court deems just and proper.

**FURTHER**, Plaintiffs pray that the exact nature and extent of Plaintiffs' damages have yet to be calculated, and Plaintiffs will seek leave of Court to amend this complaint to conform to proof at the time of trial.

**FURTHER**, Plaintiff prays that a jury trial is granted in this matter.

*s/JP Gorham*

---

JP Gorham (Bar # 31746)
JP Gorham Attorney At Law LLC
PO BOX 86928
Baton Rouge, LA 70879
225-341-5939 Office
504-957-3551 Direct